UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY WHITED,

    Plaintiff/Counter-Defendant,

v.

MOTORISTS MUTUAL INSURANCE CO.,

    Defendant/Counter-Plaintiff,    CASE NUMBER: 08-10653
                                            HONORABLE VICTORIA A. ROBERTS

v.

PATRICIA GREEN, CHRISTINE MARVASO,
and LUV-N-CARE, LLC, individually, jointly
and severally,

    Third-Party Defendants.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR
FAILURE TO COMPLY WITH DISCOVERY ORDERS**

**I.    INTRODUCTION**

    This matter is before the Court on Defendant's Amended Motion to Dismiss for failure to comply with discovery orders. The Court heard oral arguments on May 13, 2009. Defendant's motion is **DENIED**. However, Plaintiff's failure to comply with outstanding discovery orders and this order will result in dismissal of his action.

**II.    BACKGROUND**

    On September 10, 1982, Plaintiff Gary Whited was involved in an automobile accident which rendered him quadriplegic. At the time of the accident, Plaintiff was insured under the terms of a policy issued by Defendant Motorists Mutual Insurance, Co., in accordance with Michigan's No-Fault Automobile Insurance Act, Mich. Comp.

Laws ("M.C.L.") § 500.3101, *et seq.*

On November 20, 2007, Plaintiff sued Defendant in Wayne County Circuit Court, to recover payments allegedly due for medical expenses incurred as a result of his injuries. Defendant removed to this Court in February 2008, and in June, counterclaimed for overpayment and unjust enrichment (Doc. #7). Defendant amended its counterclaim on February 26, 2009, adding third-party claims against Plaintiff's sister, Patricia Green, Ms. Green's daughter, Christina Marvaso, and Luv-N-Care, LLC, a Michigan corporation set up by Ms. Green to provide attendant care for Plaintiff (Doc. #50). Defendant accused Luv-N-Care of unjust enrichment and charged Mmes. Green and Marvaso with unjust enrichment, fraud and misrepresentation.

### A.     Discovery Proceedings To-Date

Discovery has been acrimonious. The parties traded subpoenas, motions to quash, motions to compel discovery and requests for protective orders (Docs. #11-12, 17-18, 20-21, 25, 30, 37, 41-42). The Court held numerous telephone conferences and issued several deadline extensions. Plaintiff's perceived lack of cooperation and failure to abide by discovery obligations prompted Defendant's motion to dismiss.

Defendant complains about Plaintiff's conduct relating to four discovery orders. First, on October 7, 2008, the Court ordered Plaintiff to submit Luv-N-Care's payroll records, copies of cancelled checks, policies and employment manuals, incorporation documents and records of employee benefits. (Doc. #15; *see* Def.'s Mot. Exs. C, F.)

Under the order issued October 24, Plaintiff was to supply personnel files for 26 former caregivers, including applications, resumes, licenses and certificates. (Doc. #24; *see* Def.'s Mot. Ex. D.) The Court also ordered production of time and attendance

records from November 2007 to the present, and expense ledgers.

On December 11, the Court ordered additional disclosures of Luv-N-Care's payroll records, as well as employee time-cards since November 2007 and other tangible evidence pertaining to the litigation. (Doc. #35; *see* Def.'s Ex. E.)

Lastly, on February 23, 2009, the Court allowed Defendant to subpoena Plaintiff's personal income tax and bank records. (Doc. #49; *see* Def.'s Ex. A.) In addition, the Court ordered the production of tax and bank records belonging to Ms. Green and bank records for Ms. Marvaso.

### B. Allegations in Motion Papers

Defendant represents that, despite the Court's orders, Plaintiff has yet to produce numerous documents and records. Defendant lists 14 categories of documents it claims were not entirely provided, including: Luv-N-Care's payroll records; Daily Progress Notes ("DPNs"), chem-strips and other records of treatments received by Plaintiff; Time and Attendance sheets ("TAs") executed by individual caregivers; and employment documents, including job descriptions, applications and resumes for all caregivers. (*See* Def.'s Letter to Pl.'s Counsel (Mar. 27, 2009), Def.'s Ex. F.) Defendant acknowledges receiving two bankers boxes of DPNs and TAs on April 17. While Defendant has not reviewed all DPNs in the boxes, it claims several TAs remain outstanding.

Defendant's motion papers also state it does not have Plaintiff's and Ms. Green's tax returns for 2006, 2007 and 2008, and Luv-N-Care's return for 2008. At the hearing, Defendant's counsel testified she has since received all 2006 and 2007 returns, but is still missing Luv-N-Care's statement for 2008.

Plaintiff asserts he supplied all documents listed in each discovery order, with a few exceptions:

1. Oct. 7, 2008 order: Plaintiff claims everything was produced except for copies of cancelled checks, which he does not have. Plaintiff states he provided Defendant with copies of bank statements instead.

2. Oct. 24, 2008 order: Plaintiff claims all documents were produced.

3. Dec. 11, 2008 order: Plaintiff claims all documents were produced, except tape recordings of Dr. Laban, which do not exist, and employee time-cards from October 11 to 31, 2007, which cannot be located.

4. Feb. 23, 2009 order: Plaintiff states 2008 tax returns for Luv-N-Care, Patricia Green and Gary Whited have not yet been filed. Plaintiff states he sent Defendant a copy of an application for extended time to file, and indicates he and Ms. Green will sign authorizations so Defendant can independently obtain tax returns from the IRS.

Plaintiff acknowledges production of certain materials was delayed, but asserts this was not due to willfulness or bad faith, but rather because of misunderstandings about which documents were requested, and the sheer volume of records.

### C. Allegations at Hearing

At the hearing, counsel for Defendant restated Defendant did not receive all TAs, including many outside the October 11 to 31, 2007 timeframe. However, new and quite serious allegations were made. Counsel indicated Defendant was growing increasingly concerned that Ms. Green or someone else was manufacturing or falsifying time sheets.

Counsel gave examples. She said she received two time sheets for the same

caregiver and the same pay period, but with different records of hours worked. The time sheets were received on different dates; one is marked "signature on file," while the other is signed by the caregiver. Counsel states she spoke to at least one former caregiver, Brenda Biddle, for whom she received discrepant time sheets. According to counsel, Ms. Biddle said she did not prepare contemporaneous time sheets or authorize her signature to be kept on file, but that Ms. Green called her back to fill out and sign a number of sheets at one time, for hours previously performed. Counsel claims the time sheets marked "signature on file," which were received first, contain Ms. Green's handwriting; the others are written and signed by Ms. Biddle.

Defense counsel also raised several issues regarding DPNs, which are maintained by individual caregivers to keep track of a patient's condition and services provided. Counsel says several caregivers testified under oath that they filled out, dated and signed DPNs in their own handwriting, for each day they worked. According to counsel, however, many DPNs are missing, and were replaced by computerized print-outs with a list of treatments and check marks next to services rendered. These sheets are initialed, but not signed. Counsel expressed concern that these sheets list treatments and services that were not rendered; without the original DPNs, it may be difficult to verify their accuracy.

In response, counsel for Plaintiff stated she provided all documents received from her client, and was not aware of missing records. Counsel noted that the veracity of files produced goes more to the merits of Defendant's fraud claim than to its motion for discovery sanctions. Finally, counsel announced her intention to file a motion to withdraw from representing Plaintiff, Ms. Green and Luv-N-Care, due to a breakdown in

5

the attorney-client relationship.

## III.   ANALYSIS

The purpose of discovery is to make relevant information available to litigants, so that disputes may be resolved with as full and accurate an understanding of the true facts as possible. Properly conducted, discovery narrows and clarifies issues in dispute, reduces the risk of surprise, and gives parties a better sense of their chances of success, and their options for settlement. *See Hickman v. Taylor*, 329 U.S. 495, 501, 507 (1947) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.").

Federal Rule of Civil Procedure 37(b) gives courts a range of sanctions against litigants who fail to cooperate in discovery or refuse to comply with disclosure orders. These include:

> (i)  directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii)    treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). The Supreme Court holds that dismissing an entire action for failure to comply with discovery orders can be appropriate "not merely to penalize those whose conduct [deserves it], but to deter those who might be tempted to such

6

conduct in the absence of such a deterrent." *Nat'l Hockey League* (*NHL*) *v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976); *see also Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995).

In the Sixth Circuit, courts considering dismissing a case under Rule 37(b) must analyze whether: (1) the non-moving party's failure to cooperate in discovery was due to willfulness, bad faith, or fault; (2) the non-moving party's failure to cooperate caused prejudice to the adversary; (3) the non-moving party was warned that its conduct could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered. *Bass*, 71 F.3d at 241 (*citing Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990). "A willful violation occurs whenever there is a conscious and intentional failure to comply with the court order." *Id.* (*citing Brookdale Mill, Inc. v. Rowley*, 218 F.2d 728, 729 (6th Cir. 1954)).

On appeal, the district court's dismissal of an action under Rule 37(b) is reviewed for abuse of discretion. *Id.* (*citing NHL*, 427 U.S. at 643; *Reg'l Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir. 1988)).

Defendant argues the only explanation for Plaintiff's piecemeal production of documents is bad faith and willful ignorance of court orders, and requests the Court impose the ultimate sanction by dismissing the case in its entirety. Plaintiff retorts that, with the exception of employee time-cards from October 11 to 31, 2007, and 2008 tax returns, Defendant received all the documents it requested.

The Court agrees with Defendant that Plaintiff's participation in discovery has been less than satisfactory. From the beginning, Plaintiff eschewed voluntary cooperation and adopted a confrontational attitude, forcing Defendant to file repeated

7

motions to compel. The Court issued rulings pertaining to nearly every aspect of discovery; some documents, such as Luv-N-Care's payroll records or caregiver attendance sheets, were the object of two orders or more. Plaintiff blames the volume of records for the delays, and alleges he did not understand that Defendant's request for "time and attendance records" included actual time-cards prepared by employees. Neither excuse is satisfactory.

At the same time, Plaintiff is not solely to blame for the delays. Defendant filed its share of motions and was ordered to produce on at least two occasions. Also, many of Defendant's grievances relate to Mmes. Green and Marvaso and to Luv-N-Care, who were only formally joined as parties in February 2009. Lastly, Plaintiff produced a number of documents, and Defendant acknowledges recently receiving two bankers boxes of papers it has not yet reviewed.

Based on the four *Bass* factors, the Court concludes dismissal is inappropriate. To be clear, Plaintiff's failure to comply with discovery orders comes perilously close to willfulness and bad faith. And, there is no question of prejudice to Defendant: for instance, Defendant was forced to depose witnesses without a complete factual record, as a result of which it needs to re-depose at least two people.

However, the lack of prior warning and sanctions weighs against dismissal. In some cases dismissal may be justified without prior sanction. *See Harmon v. CSX Transp.*, 110 F.3d 364, 368 (6th Cir. 1997); *Halas v. Consumer Servs.*, 16 F.3d 161, 165 (7th Cir. 1994) ("It is axiomatic that the district court need not impose a lesser sanction prior to assessing the sanction of dismissal."). However, this is a harsh penalty which should be applied only in exceptional cases. *See Reg'l Refuse Sys.*, 842 F.2d at

155 ("Dismissal is generally imposed only for egregious misconduct, such as *repeated* failure to appear for deposition") (emphasis in original).  In fact, many circuits require district courts to explain why, in the absence of a clear record of delay or prior failed sanctions, a lesser punishment would not suffice.  *See, e.g., Maynard v. Nygren*, 332 F.3d 462, 468 (7th Cir. 2003); *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1478-79 (D.C. Cir. 1995) (citing cases).

   Finally, setting aside Defendant's fraud allegations, of which the Court has no proof, Plaintiff's conduct does not appear as egregious as that described in cases where courts granted Rule 37(b) motions to dismiss.  *See, e.g., Tech. Recycling Corp. v. City of Taylor*, 186 Fed. Appx. 624, 632 (6th Cir. 2006) (unpublished) (plaintiffs disobeyed discovery orders and extensions, caused over a dozen motions, conferences and court hearings to be held, made non-credible excuses, and were warned that dismissal of their action was imminent); *Harmon*, 110 F.3d at 368 (plaintiff's failure to answer motion to compel, comply with discovery order, and respond to motion to dismiss, even after extension of time, constituted "a clear record of delay and contumacious conduct."); *Bass*, 71 F.3d at 242 (plaintiff intentionally failed to comply with discovery orders, used subterfuge to avoid attending deposition, refused to produce documents for over a year, and was warned that future non-compliance would lead to dismissal); *Pilgrim Motorsports, Inc. v. Universal Underwriters Group*, No. 06-12629, 2007 U.S. Dist. LEXIS 11752, at *5 (E.D. Mich. Feb. 21, 2007) (unpublished) (plaintiff was "stubbornly disobedient and willfully contemptuous" when it disregarded discovery rules, failed to comply with stipulated order, and counsel did not appear at hearing to address his failure to register for electronic filing).

Plaintiff's lack of cooperation in discovery does not meet the requisite level of egregiousness to warrant dismissal. However, after a year of bickering, multiple extensions and several orders to compel, Plaintiff continues to make tardy or incomplete disclosures without explanation, and shows little interest in abiding by scheduling and discovery orders.

Furthermore, after listening to the troubling allegations outlined by counsel for Defendant, which Plaintiff's attorney could not counter, the Court is concerned as well, that Plaintiff may be altering and/or destroying evidence. Plaintiff's behavior has consistently lacked forthrightness. The Court credits defense counsel's representations about duplicate TAs and computerized print-outs replacing missing DPNs.

Plaintiff is warned that further noncompliance with discovery or scheduling orders will result in dismissal with prejudice. The Court will tolerate no further unjustified delays, particularly for items that have already been the subject of discovery orders, including, but not limited to: original caregiver TAs and DPNs; Luv-N-Care's payroll and expense records; personnel files for current and former caregivers; and all records of care provided to Plaintiff. The rules of discovery are not to be taken lightly; those who seek redress from the courts must be prepared to abide by them, or suffer the consequences.

## IV.  CONCLUSION

Defendant's motion is **DENIED**.

**HOWEVER**, the Court:

1. **ORDERS** Plaintiff to provide Defendant with updated medical authorizations with

     respect to his recent permanent colostomy surgery, his upcoming surgery to close ulcers on his body, and any other treatment or surgeries undergone since October 2008.  Information supplied must include names and locations of hospitals where surgeries or treatments were performed, and names of doctors or other treaters.  These medical authorizations must be sent to Defendant's counsel by June 1, 2009;

2. **ORDERS** Defendant to designate a Nursing Care Manager to oversee Plaintiff's case;

3. **ORDERS** Plaintiff and Mmes. Green and Marvaso to give the Nursing Care Manager access to Plaintiff upon reasonable notice, and not to interfere with the Nursing Care Manager's fulfillment of his or her duties;

4. **ORDERS** Plaintiff to submit to an Occupation Therapist evaluation to assess his condition.  Plaintiff must allow the Nursing Care Manager and Defendant's counsel to be present during the evaluation, and may request his counsel to attend as well;

5. **ALLOWS** Defendant to re-depose Patricia Green and Brenda Biddle at Plaintiff's expense.  Defendant may submit other requests to re-depose individuals for whom records were received after their depositions;

6. **ORDERS** Patricia Green to provide Defendant with a handwriting sample when she is re-deposed; and

7. **ORDERS** facilitation planned for May 29, 2009 and the settlement conference for June 9, 2009, cancelled.

8. **ORDERS** Luv-N-Care's 2008 tax return be completed and filed by June 8, 2009, with copies provided to Defendant. If this cannot be done, Plaintiff must submit its reasons why to the Court, in writing, no later than Wednesday, May 27, 2009;

9. **ORDERS** Plaintiff to produce all Time and Attendance sheets and Daily Progress Notes from October 11, 2007 forward, *in their original form*, as well as all computer-generated Daily Progress Notes. All documents must be bates-stamped. Time and Attendance sheets must be matched to corresponding Daily Progress Notes. These records are to be sent to Defendant's counsel under post-mark dated no later than June 1, 2009. If Plaintiff's claim or Defendant's counterclaims proceed to trial, a presumption of adverse inference will apply for documents not submitted by this final deadline; and

10. **ORDERS** Plaintiff to ship any and all computers used by Ms. Green or others to handle Luv-N-Care's affairs, to Speckin Forensic Laboratory, 2400 Science Parkway, Suite 200, Okemos, MI 48864, care of Michael J. Sinke. This includes any computer(s) used to keep employee files, records of care provided to and services received by Plaintiff, and specifically the machine(s) used to generate computerized daily progress notes. The computer(s) must be shipped by Tuesday, May 26, 2009. No one, including Plaintiff, Ms. Green and Ms. Marvaso, may touch the computer(s), except for purposes of shipping them to the address above. The Court expressly forbids anyone from turning on and using the computer(s), or taking any action to alter, delete, or otherwise render unusable any information pertaining to this case. Patricia Green is to contact

Defendant's counsel and let her know the cost of shipping, and Defendant's counsel is to arrange to pay this cost before Ms. Green ships. There is no waiver of the attorney-client privilege for anything Speckin Forensic may uncover.

Finally, Plaintiff is **NOTIFIED** that failure to abide by this and other Court orders will result in dismissal of his action with prejudice. Defendant's claims against Plaintiff, Luv-N-Care, LLC, Patricia Green and Christine Marvaso will continue. For that reason, Plaintiff, Luv-N-Care, and Mmes. Green and Marvaso will remain obligated to comply with discovery orders and produce all requested documents, even if Plaintiff's action is dismissed for failure to comply.

The Court granted Miller & Tischler, P.C.'s motion to withdraw. Therefore, Eileen Fallon Sullivan is to serve a copy of this Order upon her clients, by both first class mail and certified mail, return receipt requested. A Proof of Service must also be filed with the Court.

For purposes of complying with the above, Plaintiff, Ms. Green and Luv-N-Care are without counsel. Defendant's counsel can be in touch with them directly for purposes of complying with this order. The Court notes that Third-Party Defendant Christine Marvaso retained separate counsel.

All other discovery in this case is stayed until June 19, 2009, so Plaintiff, Luv-N-Care and Ms. Green can find replacement counsel. Plaintiff is to notify the Court as soon as counsel is found. If Plaintiff and/or Ms. Green are not represented by June 19, this matter will proceed. However, if Luv-N-Care does not have counsel appear on its behalf by June 19, it will face default. A corporation cannot appear otherwise than through an attorney in federal court. *United States v. 9.19 Acres of Land*, 416 F.2d

13

1244, 1245 (6th Cir. 1969).

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: May 19, 2009

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 19, 2009.<br><br>s/Carol A. Pinegar<br>Deputy Clerk |

14